IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| LENA STOUT, an individual,<br><br>                    Plaintiff,<br><br>        v.<br><br>DESERET MUTUAL BENEFIT ADMINISTRATORS, a Utah corporation, and DESERET HEALTHCARE EMPLOYEE BENEFITS TRUST, a Utah business trust,<br><br>                    Defendants. | **RULING & ORDER**<br><br>Case No. 1:11-cv-00143<br><br>United States District Court Judge Robert J. Shelby<br><br>Magistrate Judge Dustin Pead |

In September 2011, Plaintiff Lena Stout (Stout) filed her claim against Defendants Deseret Mutual Benefit Administrators (DMBA) and Deseret Healthcare Employees Trust (the Trust) (collectively Defendants) under the Employee Retirement Income Security Act, as amended (ERISA).  *See,* 29 U.S.C. § 1001 et. seq.  Stout claims that she was wrongfully denied benefits under an Accidental Death and Dismemberment Plan (the AD&D Plan), obtained through her employer, on the grounds that her husband's death did not meet the definition of "accident" under the terms of the Plan. (Document 4, Amended Complaint).

Currently pending before the court is Stout's Motion For Leave to conduct limited discovery related to what Stout characterizes as DMBA's dual role and conflict of interest in both administrating and funding the AD&D policy.  (Document 13).  Stout has also filed a Motion To Compel seeking an order of the court compelling the production of unredacted administrative records.  (Document 14).  On July 16, 2012, Magistrate Judge Brook Wells entered an order

staying all relevant deadlines until resolution of the pending matters. (Document 20). In August, 2010 the matter was reassigned to Magistrate Judge Dustin Pead pursuant to 28 U.S.C. § 636(b)(1)(A).

**1. Motion For Leave To Conduct Limited Discovery**

Plaintiff Stout seeks leave of the court to conduct specific and limited discovery[1] on "the issue of DMBA's inherent conflict of interest because DMBA both administers and funds Stout's AD&D policy." (Document 13, pg. 2). Defendants oppose Stout's motion, arguing that additional discovery is unwarranted since a dual role conflict of interest does not exist. (Document 17).

In ERISA cases, the plan gives the administrator "'authority to determine eligibility for benefits or to construe the terms of the plan.'" Holcomb v. Unum Life Ins. Co. of Am., 578 F.3d 1187, 1192 (10th Cir. 2009) (quoting, Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997, 1002-03 (10th Cir. 2004)). On review, a court considers the administrator's decision for an abuse of discretion and the review is limited to the administrative record. *Id.* Discovery is generally precluded in ERISA cases when its purpose is to supplement the administrative record regarding a party's eligibility for benefits. Eugene S. v. Horizon Blue Cross Blue Shield of N.J., 663 F.3d 1124, 1129 (10th Cir. 2011) (citation omitted). However, in cases where a there is a dual role conflict of interest a court must weigh the conflict "in its abuse of discretion analysis, but also

---

[1] Stout request specific and limited discovery in the following areas: the relationship of DMBA and the Trust in connection with the policy's administration, any bias or incentive for DMBA's decision to deny benefits, the independence and scope of reviews performed by DMBA and the Trust, statistical information verifying that DMBA and the Trust are consistent in their claims review and processing, information on incentives or bonuses, historical data relating to claim denial by DMBA, policies in place for DMBA when it becomes the insurer for already existing benefit plans, information about the relationship between DMBA and the Trust, information about any independent reviewers that review DMBA's claims. (Document 13).

must allocate the conflict more or less weight depending on its seriousness." Murphy v. Deloite & Touche Group Ins. Plan, 619 F.3d 11521, 1157 (10th Cir. 2010).

In determining whether an insurer or administrator is subject to a conflict of interest, courts may consider certain factors, "including whether:  (1) the plan is self-funded; (2) the company funding the plan appointed and compensated the plan administrator; (3) the plan administrator's performance reviews or level of compensation were linked to the denial of benefits, and (4) the provision of benefits had a significant economic impact on the company administering the plan." Finley v. Hewlett-Packard Co. Emp. Benefits Org. Income Protection Plan, 379 F.3d 1168, 1176 (10th Cir. 2004) (citing, Kimber v. Thiokol, 196 F.3d 1092, 1098 (10th Cir. 1999)).

While somewhat unorthodox, defendants attach to their opposition the Declaration of Pamela J. Larsen, Director and Senior Associate General Counsel at DMBA .  In her Declaration, Ms. Larsen specifically testifies that the DMBA does not both administer and fund the Plan.  To the contrary, Ms. Larsen states that the Trust is a "self-funded voluntary employees' beneficiary association, established under Section 501(a) of the Internal Revenue Code."  (Document Number 17-2).  Further, DMBA "is a non-profit corporation, separate from the Trust" and that "Trust employees do not make, direct, or have any association with DMBA's claim decisions." (Document 17-2).  While DMBA is compensated by the Trust for the actual costs of administration, neither DMBA nor its claim specialists receive compensation or other financial benefits based upon the number of claims denied.  (Document 17-2).

Accordingly, based upon the relevant factors along with Ms. Larsen's Declaration, which the court accepts in good faith and assumes the truthfulness thereof, the court concludes that a dual role conflict of interest does not exist and that it is unnecessary to conduct additional

discovery into the seriousness of the conflict or the impact that it could have on claims' administration.  See, Murphy at 1157.  Unlike the cases relied upon by Stout, DMBA is not functioning as entity that both evaluates claims for benefits and pays benefit claims.  See, Metropolitan Life Ins. v. Glenn, 554 U.S. 105, 111 (2008).  Instead, by employing DMBA as a third party administrator of the Trust and separating itself from the claims review process, the Trust has attempted to avoid conflict or economic incentives.  But see, Murphy v. Deloitte & Touche Group Ins. Plan, 619 F.3d 1151 (10th Cir. 2010) (insurance plan was both insured and administered by the same entity); Gundersen v. Metropolitan Life Ins., 2011 WL 487755 (D. Utah) (allowing for additional discovery because "[t]his is clearly a case with a dual role conflict of interest because MetLife is funding and administering the plan.").

Additionally, Rule 26(b)(1) applies in ERISA cases and limits discovery to "relevant information" that appears "reasonably calculated to lead to the discovery of admissible evidence."  Here, given that no dual role conflict of interest exists, other information relating to the seriousness of a conflict and its role in the decision making process is not relevant.

Accordingly, at this juncture, Plaintiff's Motion For Stay to conduct additional discovery is DENIED.

**2.  Motion To Compel Unreadacted Documents**

Plaintiff Stout also seeks an order of the court compelling defendants to produce a complete administrative record.  (Document 14).  While the record has been produced, Stout contends that key portions have been redacted.[2]  In response, Defendants produced a privilege

---

[2] Several important portions which Stout contends have been redacted, include: (1) relevant portions of the "Claims Review Committee" document, (2) portions of the "Claim Review Minutes" regarding the Committee's claim review process, and (3) key information from the "Summary for CRC Advocates" summarizing Stout's claim and the reasons behind the denial of policy benefit. (Document 15).  Given the nature of these documents and the context of the

log indicating that the redacted portions of the record contain the "advice of legal counsel" and are therefore protected under the attorney client privilege. (Document 17-2). Stout argues, however, in ERISA cases plan administrators owe a fiduciary duty to their beneficiaries and therefore an exception to the attorney-client privilege exists. (Document 18).

In general, communications between attorneys and their clients are privileged. Once an attorney client relationship is established, the privilege that enures protects "'confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.'" In re Grand Jury Proceedings, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting, In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, 697 F.2d 277, 278 (10th Cir. 1983)). In ERISA cases, however, "administrators owe a fiduciary duty to their beneficiaries that creates an exception to the attorney-client relationship." Gundersen, at *8 (citing, United States v. Mett, 178 F.3d 1058, 1062 (9th Cir. 1999). The exception arises because "'as a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that he is personally being served.'" Id. (quoting, Mett, at 1063).

Defendants claim attorney client privilege as to four documents: DMBA/STOUT 44, 55, 69 and 79. All of the documents appear to have been created before March 30, 2010, the date on which Defendants issued their final decision denying Stout's benefits. Stout argues that because all of the documents "appear to deal specifically with how Defendants handled Stout's claim before they denied it" the fiduciary exception applies and the documents should be produced. (Document Number 18). Given that the fiduciary exception analysis examines whether the

---

redactions, Stout asks the court to require DMBA to disclose the administrative record in it entirety including the currently redacted portions of the record.

communications were provided in a fiduciary or non-fiduciary context as well as the content of the actual communications, the court concludes that an in camera review of the documents is appropriate.  *See*, Gundersen, at *9.

Accordingly, Plaintiff's Motion To Compel is GRANTED, in part, for purposes of an in camera review.  Within ten (10) days of the date of this Order, Defendants shall produce the unredacted documents to the court for its in camera review.  Subsequent to that review, the court will issue a ruling regarding whether further production is appropriate.

DATED this 13th day of November, 2012.

_____
Dustin Pead
U.S. Federal Magistrate Judge