IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| LENA STOUT,<br><br>    Plaintiff,<br><br>vs.<br><br>DESERET MUTUAL BENEFIT ADMINISTRATORS and DESERET HEALTHCARE EMPLOYEE BENEFITS TRUST,<br><br>    Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No. 1:11-cv-143 |

  Plaintiff Lena Stout seeks an award of insurance benefits under 29 U.S.C. § 1132(a)(1)(B) for the death of her husband, Gary Stout, who was insured under an accidental death policy that is administered by Defendants Deseret Mutual Benefit Administrators (DMBA) and Deseret Healthcare Employee Benefits Trust. Ms. Stout and the Defendants have filed cross motions for summary judgment on all of Ms. Stout's claims for relief. Because the court finds that the Defendants' interpretation of the insurance policy was reasonable, the court DENIES Ms. Stout's Motion for Summary Judgment (Dkt. 31) and GRANTS the Defendants' Motion for Summary Judgment (Dkt. 30).

              BACKGROUND

  Ms. Stout and her husband were insured through the Deseret Healthcare Group Term Life Plan and the Deseret Healthcare 24 Hour Accidental Death and Dismemberment Rider

(collectively, "the Policy").  The Policy was offered to employees of entities owned by or affiliated with The Church of Jesus Christ of Latter-Day Saints.  The Deseret Healthcare Employee Benefits Trust is a self-funded voluntary employees' beneficiary association which provides for payment of benefits that are due to its members under the terms of the Policy.  The Policy states that the Benefits Trust "shall have full discretionary authority to interpret the Plan and determine benefit eligibility."  (R. at 1, 24.)  The Benefits Trust has delegated claims administration to DMBA, a non-profit corporation that administers policies under the terms of an Administrative Services Agreement.

On October 11, 2009, Mr. Stout started using a fentanyl patch that was prescribed by his doctor for back pain.  (R. at 58.)  The patch did not work as intended, and Mr. Stout died from an overdose of fentanyl.  (R. at 57-58.)  Mr. Stout's Death Certificate classified his death as an "Accident" and listed two causes of death: (1) acute fentanyl and diphenhydramine [Benadryl] intoxication and (2) atherosclerotic and hypertensive cardiovascular disease.  (R. at 38.)

On January 22, 2010, Ms. Stout submitted a claim to the Defendants for payment of a $160,000 benefit available under the Policy for an accidental death.  The Policy made this benefit available when death was "a direct result of accidental bodily injuries, independent of all other causes."  (R. at 2.)  The Policy defines an "Accident" as "an unpremeditated event of violent and external means that happens suddenly, without intention or design, is unexpected, unusual, unforeseen, is identifiable as to time or place, and is not the result of illness."  (R. at 1.)  The Policy also contains the following exclusion: "[N]o payment will be made for any loss caused wholly or partly, directly or indirectly, by . . . sickness, including mental or bodily infirmity, sickness, disease, hernia of any kind, bacterial infection (other than caused in connection with an

eligible accidental injury), or medical and/or surgical treatment for any illness or disease." (R. at 2.)

The Defendants denied Ms. Stout's claim for two reasons. First, the Defendants concluded that Mr. Stout's death did not fit the definition of "Accident" under the Policy because "first, his death was not the result of any violent and external event, and second, the coroner listed atherosclerotic and hypertensive cardiovascular disease as a contributing cause of death." (R. at 45.) As a second basis for denial, the Defendants stated:

> It was not addressed in your claim letter but your husband was taking a very powerful narcotic drug (fentanyl) to treat intense pain that was caused by the aftermath of his bladder cancer and treatment . . . . According to the amended death certificate this drug along with diphenhydramine—which was also treating some kind of bodily infirmity—was the direct cause of death.

(R. at 46.)

Ms. Stout requested an administrative appeal of her claim. She submitted a letter from Dr. Erik D. Christensen, the Medical Examiner who wrote Mr. Stout's Death Certificate. Dr. Christensen explained that the level of fentanyl in Mr. Stout's body was sufficiently high that it was "the sole cause of death . . . , regardless of [any] underlying illness." (R. at 57-58.) In addition, Dr. Christensen stated that Mr. Stout's fentanyl level "would have been a sufficient explanation of his death, even without the additional presence of diphenhydramine in his system." (*Id.*) Finally, Dr. Christensen noted that "Mr. Stout's use of fentanyl was entirely unrelated to his prior diagnosis of bladder cancer, but was the result of back pain." (*Id.*)

In an email exchange between Pamela J. Larsen, DMBA's associate general counsel, and Scott Campbell, the manager of disability and life plans, Ms. Larsen wrote that Dr. Christensen's letter did not change her initial opinion that Mr. Stout's death did not meet "the definition of

3

accident as set forth in the policy. [Mr. Stout] knowingly took the prescribed medication and his death was not as a result of 'an unpremeditated event of violent and external means . . . .' Had he died as [a] result of being hit by a car, that would be another story." (R. at 55.) Mr. Campbell prepared a summary of Ms. Stout's appeal for the Claims Review Committee. Mr. Campbell acknowledged that "receiving large amounts of a highly potent narcotic drug could be viewed as a violent injury," but concluded that the Policy exclusion barring any loss that is connected to treatment for any illness or disease would still require the denial of Ms. Stout's claim. (R. at 62-63.)

The Claims Review Committee reviewed Ms. Stout's appeal at a meeting on March 25, 2010. The Committee upheld the denial of benefits and informed Ms. Stout of its decision in a letter dated March 30, 2010. The letter stated: "Based on the facts, the Committee agreed the cause of your husband's death does not meet the Plan's definition of Accidental Death." (R. at 82.) Ms. Stout then brought this lawsuit.

## ANALYSIS

**I.   Standard of Review**

The court grants summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

Ms. Stout brings her claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which allows the beneficiary of an ERISA plan to "recover benefits due to [her] under the terms

of [the] plan." *Id.* The court generally employs a *de novo* standard of review to evaluate a claim under ERISA unless the policy documents contain language that grants discretion to the fiduciary of a plan to interpret the terms of the plan and to determine eligibility for benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, the parties do not dispute that the Policy administered by the Defendants contains language granting the Defendants this discretion. (R. at 24.) Accordingly, the court reviews the Defendants' denial of Ms. Stout's claim under the more deferential abuse of discretion standard. *See, e.g.*, *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1167 (10th Cir. 2006). Under this standard, the court's review is limited to "determining whether the . . . interpretation [of the plan] was reasonable and made in good faith." *Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004). When reviewing a claim under the arbitrary and capricious standard, "the Administrator's decision need not be the only logical one nor even the best one." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (citation omitted) (internal quotation marks omitted). "The reviewing court 'need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness.'" *Id.* (quoting *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999)).

## II.     Interpretation of Accidental Bodily Injury

Ms. Stout argues that it was arbitrary and capricious for the Defendants to determine that Mr. Stout's death was not caused by an accidental bodily injury and was therefore not covered by the Policy. The Policy defines an "Accident" as an "unpremeditated event of violent and external means." Ms. Stout points out that several courts have criticized similar definitions of the term "accident" because the definition is excessively vague and difficult to apply. *See, e.g.*, *Buce v.*

5

*Allianz Life Ins. Co.*, 247 F.3d 1133, 1146 (11th Cir. 2001) (noting that the definition of "accident" as an "unexpected, external, violent, and sudden event" could charitably be described as "somewhat less than dispositive."). These courts have opted to define the term "accident" according to its natural and commonly understood meaning. *See id.* at 1147; *Parker v. Danaher Corp.*, 851 F. Supp. 1287, 1295 ("[W]e believe that in the common understanding of man [the decedent's] death would be regarded as accidental."). But the Tenth Circuit has rejected the argument that a beneficiary's reasonable expectations should govern the interpretation of ambiguous plan terms, at least in ERISA cases where a court must apply the arbitrary and capricious standard of review: "Allowing a beneficiary's expectations under the [ERISA] plan to dominate an administrator's interpretation would obliterate the discretionary review required by *Firestone*." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1101 (10th Cir. 1999).

Under Utah state law, there are cases that support Ms. Stout's contention that her husband's death qualifies as an accident under the Policy. In *Hardy v. Beneficial Life Insurance Co.*, the Utah Court of Appeals found that the plaintiff was entitled to recover under an accidental death policy after her husband died from an unintentional drug overdose. 797 P.2d 1, 1-2 (Utah Ct. App. 1990). Like the policy at issue here, the policy in *Hardy* required a claimant to show that the insured's death resulted from an "accidental bodily injury." The Tenth Circuit cited the unintentional drug overdose in *Hardy* as an example of an accidental bodily injury that involved external violence:

> Pursuant to our holding in *Wright* [*v. Am. Home Assurance Co.*, 488 F.2d 361 (10th Cir. 1973)], a bodily injury under Utah law implies some sort of external violence without which the injury would not have occurred. *Compare, e.g.*, *Hoffman* [*v. Life Ins. Co. of North Am.*, 669 P.2d 410, 414 (Utah 1983)] (decedent shot by police: recovery permitted) *and Hardy v. Beneficial Life Ins. Co.*, 787

> P.2d 1, 2 (Utah App. 1990), *cert. denied*, 795 P.2d 1138 (Utah 1990) (decedent ingested drug overdose; recovery permitted) *with Elton* [*v. Bankers Life & Cas. Co.*, 516 P.2d 165, 169 (Utah 1973)] (decedent suffered heart failure caused by arteriosclerosis aggravated by stress but unaccompanied by any external violence or physical impact; recovery denied).

*Winchester v. Prudential Life Ins. Co. of America*, 975 F.2d 1479, 1486 (10th Cir. 1992). If the court followed the reasoning in *Hardy* and *Winchester*, Mr. Stout's death from fentanyl poisoning would qualify as an accidental bodily injury.

But Utah state law does not apply in this case. In *Winchester*, the Tenth Circuit applied Utah law because the case involved an insured plan and the court determined that ERISA does not preempt state law for an insured plan. *See id.* at 1485. Here, Ms. Stout admits that the Policy appears to be a self-funded plan. As a result, ERISA preempts Utah state law: "Because a self-funded plan may not be deemed an insurance company, [ERISA's] saving clause does not save state insurance laws from preemption when applied to such a plan directly." *Id.* at 1484. The court therefore applies federal common law instead of Utah state law.

Ms. Stout has not cited the court to any binding authority holding that, under federal common law, poisoning is an example of a bodily injury involving external violence. For this reason, the court restricts its analysis to the narrow question of whether the Defendants' interpretation of the Policy language was reasonable in the absence of any definitive federal common law on the appropriate construction of the Policy terms.

The court finds that the Defendants' interpretation was reasonable. Although the court would reach a different interpretation than the Defendants if it addressed the question *de novo*, the court cannot find that the Defendants acted arbitrarily or in bad faith. It is simply unclear what is meant by the terms "violent and external means," and the Defendants' decision that a

bodily injury under the Policy requires some sort of forceful physical impact is one of many possible reasonable interpretations.

Accordingly, the court upholds the Defendants' construction of the term "Accident" and finds that Mr. Stout's death was not covered by the Policy.

### III. Interpretation of the Policy's Exclusion for Treatment

Because the court finds that the terms of the Policy did not provide coverage for Mr. Stout's death, the court need not address the Defendants' contention that the Policy exclusion barring any loss connected to an insured's treatment for any illness or disease would additionally require the denial of Ms. Stout's claim.

### CONCLUSION

For the foregoing reasons, the court GRANTS the Defendants' Motion for Summary Judgment (Dkt. 30). Ms. Stout's Motion for Summary Judgment (Dkt. 31) is DENIED. The court orders the Clerk of the Court to close the case.

SO ORDERED this 26th day of November, 2013.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge